IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 2:06-CR-14-FL-1

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | OPINION |
| DARYL STEVEN CARR, | ) | |
| Defendant. | ) | |

Defendant came before the court upon guilty plea for sentencing October 14, 2008. At the sentencing hearing, the court overruled defendant's objection to application of the Armed Career Criminal Act ("ACCA") in his case, resulting in a substantially enhanced sentence. Reason articulated from the bench for this ruling is amplified herein.

BACKGROUND

Defendant was charged in a three-count indictment on September 27, 2006. Counts 1 and 2 charged defendant with possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924. Count 3 charged him with possession of firearms and ammunition by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924. On June 2, 2008, defendant pleaded guilty to count 3 and, pursuant to a plea agreement, the government agreed at time of sentencing to dismiss counts 1 and 2.

The presentence report filed by the United States Probation Office concluded that defendant is an armed career criminal pursuant to 18 U.S.C. § 924(e) and United States Sentence Guideline § 4B1.4. This conclusion was based on defendant's 1996 guilty pleas to 13 counts of felony

breaking and entering in North Carolina state court.[1] The guilty pleas related to defendant's breaking and entering into 13 different storage units located at a single address on May 21, 1996.

Defendant urged in written memorandum and at hearing that the ACCA is not applicable to his case. The government filed memorandum in response and argued at hearing that the ACCA does apply to defendant. For the reasons detailed below, the court finds that the ACCA does apply in this instance.

## ANALYSIS

To qualify as an armed career criminal, a defendant must satisfy three criteria. The defendant (1) must have three or more prior convictions; (2) for either a violent felony or a serious drug offense (as defined in 18 U.S.C. §§ 924(e)(2)(A) and (B)); (3) that were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). This classification significantly enhances the penalties involved from a maximum prison sentence of 10 years, 18 U.S.C. § 924(a)(2), to a minimum prison sentence of 15 years. 18 U.S.C. § 924(e)(1)

Defendant admits that the first two criteria are met in this case because defendant has 13 prior felony convictions for breaking and entering, a crime that is classified as a violent offense by the Fourth Circuit.[2] See United States v. Thompson, 421 F.3d 278, 284 (4th Cir. 2005). Defendant therefore focuses his objection on the third criteria, arguing that his prior convictions were not committed on different occasions.

---

[1] Defendant also pleaded guilty to six counts of felony larceny related to this incident. The parties did not contest whether the state larceny convictions served as predicate "violent felony" offenses for ACCA purposes. Because the 13 breaking and entering convictions are sufficient for ACCA purposes, the court makes no determination regarding the classification of the larceny convictions' status under the ACCA.

[2] Defendant also objected, for the record, to classification of his breaking and entering convictions as "violent felonies" for purposes of the ACCA, but conceded that the Fourth Circuit settled that question in Thompson.

2

The Fourth Circuit has previously addressed the question of whether separate prior convictions were committed on the same or different occasion for ACCA purposes and highlighted certain factors that may be relevant for courts to consider. See United States. v. Leeson, 453 F.3d 631, 638-43 (4th Cir. 2006); United States v. Letterlough, 63 F.3d 332 (4th Cir. 1995). These factors are: "(1) whether the offenses arose in different geographic locations; (2) whether the nature of each offense was substantively different; (3) whether each offense involved different victims; (4) whether each offense involved different criminal objectives; and (5) after the defendant committed the first-in-time offense, did the defendant have the opportunity to make a conscious and knowing decision to engage in the next-in-time offense." Leeson, 453 F.3d at 640.[3]

The Leeson/Letterlough factors are helpful guidelines for courts to use in answering the overriding question of whether offenses were committed as part of the same or different "occasion." The crux of the issue is whether the offenses in question are "those predicate offenses that can be isolated with a beginning and an end – ones that constitute an occurrence unto themselves." Letterlough, 63 F.3d at 335. The Fourth Circuit found the clearest articulation of the test for courts to apply to be: "[c]onvictions occur on occasions different from one another 'if each of the prior convictions arose out of a separate and distinct criminal episode.'" Id. (quoting United States v. Hudspeth, 42 F.3d 1015, 1019 (7th Cir. 1994) (en banc)). Various factual permutations present this issue in different ways and with different contexts, but determining whether the prior convictions "arose out of a separate and distinct criminal episode" is the heart of the issue. Id.

---

[3] While the Fourth Circuit has identified these as separate factors present in cases considering the issue before this court, it has also noted that a strong enough presence of any single factor can transform the occurrence of criminal acts from a single occasion to multiple occasions. See Leeson, 453 F.3d at 640-41 (noting that if any single factor has a strong enough presence, "it can dispositively segregate an extended criminal enterprise into a series of separate and distinct episodes).

3

In determining whether defendant's predicate crimes occurred on a single or on separate occasions, the court is limited, as both sides acknowledge, to considering "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." Shepard v. United States, 544 U.S. 13, 26 (2005).

Defendant argues that the available Shepard documents in this case do not provide sufficient evidence to determine whether defendant's breaking and entering offenses arose out of separate "occasions" or a single "occasion." The documents available to the court in the instant matter are the 1996 indictments and judgments against defendant. Defendant argues that, from these documents, it is not possible to determine whether the offenses were committed simultaneously or sequentially and, therefore, there is insufficient evidence to deduce that the crimes were committed on different occasions.

It is well-established that offenses committed close together in temporal and physical proximity can serve as separate "occasions" for ACCA purposes.[4] Defendant committed his offenses at a single address, that of the storage unit complex, in a relatively short period of time. To be decided here is whether the close temporal and physical proximity of the defendant's predicate

---

[4]See, e.g., United States v. James, 337 F.3d 387, 391 (4th Cir. 2003) (holding two robberies of stores across the street from one another on the same day to be separate occasions for ACCA purposes); United States v. Hobbs,136 F.3d 384, 387-90 (4th Cir. 1998) (holding three burglaries committed within an hour of each other to be separate occasions for the ACCA); United States v. Williams, 187 F.3d 429, 430-32 (4th Cir. 1994) (finding two instances of firing a weapon at officers separated by approximately 15 minutes to be separate ACCA occasions); United States v. Hudspeth, 42 F.3d 1015 (7th Cir. 1994) (noting other circuits that found crimes committed in rapid succession can be separate occasions for ACCA purposes and holding that defendant's robbery of three stores in a mall within approximately 35 minutes were separate occasions); United States v. Tisdale, 921 F.2d 1095, 1098-99 (10th Cir. 1990) (holding breaking into a mall and burglarizing two private businesses and a post office to be three separate occasions for ACCA purposes).

offenses indicates that those offenses are part of a single occasion or separate occasions. Both parties present compelling case law on both sides of this issue.

Defendant cites United States v. McElyea, 158 F.3d 1016 (9th Cir. 1998), for the proposition that burglaries of two neighboring shops in a mall are not separate "occasions" under the ACCA. The defendant in McElyea had two prior burglary convictions which occurred on the same date. The convictions stemmed from an episode in which the defendant broke into a store in a strip mall and then chopped a hole in the wall between the store and an adjoining one and stole items from both stores. Id. at 1018. The Ninth Circuit held that the defendant there "committed two identical crimes in basically the same location within a short time period" and therefore the two burglaries were a single "occasion" for ACCA purposes. Id. at 1021.

The government cites several cases for the proposition that offenses, similar to the ones present in this case, which were committed in close physical proximity to one another can result in different ACCA "occasions." See Hudspeth, 42 F.3d at 1018-21; Tisdale, 42 F.3d at 1098-99. The Hudspeth and Tisdale cases each involved defendants who broke into multiple shops within a mall. Each of the courts in those cases concluded that, even though the crimes were all committed at the same mall, each crime was part of a separate occasion. The government also cites a recent Tenth Circuit case involving a slightly different factual situation. In United States v. Stupka, 265 Fed. Appx. 731 (10th Cir. 2008), the defendant had been previously convicted of burglarizing three unoccupied apartments in an apartment complex. Holding that the defendant "could not have simultaneously burglarized all three apartments," the Tenth Circuit held that application of the ACCA was proper. Id. at 733-34.

5

The question of whether breaking and entering multiple subunits at a single complex constitutes separate occasions for purposes of the ACCA does not appear to have been squarely addressed by the Fourth Circuit. Based on persuasive authority, and the circumstances presented, the court finds that the physical and temporal proximity of the offenses at issue do not indicate that they occurred on a single occasion for ACCA purposes. To hold breaking and entering into separate storage units is a single criminal "occasion" would be to ignore the available record and the reality of the situation.

The available Shepard documents indicate that defendant broke into 13 different storage units and was accordingly indicted on and pleaded guilty to 13 separate counts of breaking and entering. Defendant violated several different victims' property rights on 13 separate occasions. Just because the individual storage units may have been housed under one roof does not change this. See Tisdale, 921 F.2d at 1099 ("The record shows that although defendant entered one shopping mall he had to physically break and enter three separate structures. The fact each incident occurred inside one enclosed structure does not alter our conclusion that the crimes were committed at different locations.").

The charging documents reveal that (1) defendant had a different criminal intent and objective for each of the 13 acts of breaking and entering; and (2) defendant made 13 separate, conscious choices to commit a crime. Defendant argues that there was one overarching criminal objective in his 1996 crime spree – theft. There is a certain beguiling quality to this argument where events at issue occurred at a single address. However, as shown on the face of the charging documents and judgments entered against him, defendant intentionally broke into each of 13 separate

6

storage units. Therefore, he had a distinct objective and intent in mind every time he opened a unit – namely, to open and steal from that particular unit.

More importantly, the charging documents reveal that defendant had many opportunities to cease and desist after beginning his criminal endeavor but chose not to do so on at least 12 separate occasions. At some point in the defendant's criminal excursion, defendant chose to break into the first storage unit. At this point, he could have stopped and settled for whatever he seized from that unit. However, he consciously chose to continue his criminal activity and broke into another unit and another unit and another one and so on. Defendant consciously decided to continue his activities until he had broken into 13 distinct and separate units.

Defendant argues that the record before the court does not allow for a factual finding as to how the defendant committed his crimes. Defendant asserts that, based on the available Shepard documents, it is unclear whether he broke into one unit, searched around, took his plunder and then moved on to the next unit, or whether he broke the locks on all 13 units and then went back and forth between units reviewing and comparing stored items contemplated to be taken, never completing his criminal transaction until he left the premises. Defendant's argument adds an intriguing, yet ultimately unconvincing, twist on the issue presented.

Defendant's hypothetical in which he opens all of the units and moves back and forth between them does not transform his actions into a single criminal occasion under the ACCA. Just as it is not physically possible to burglarize multiple stores simultaneously, it is not possible for defendant to complete the crimes of breaking and entering into 13 separate storage units simultaneously. Each such count to which the defendant pleaded guilty represents a separate

criminal episode. This fact weighs heavily against the defendant and toward the finding that his predicate convictions were separate "occasions" for ACCA purposes.

Upon careful review, as the court found at hearing, defendant's "prior convictions arose out of a separate and distinct criminal episode." Letterlough, 63 F.3d at 335. Based on the facts of defendant's prior convictions as revealed by the available Shepard documents, and in light of the guidance provided by Leeson and Letterlough, defendant's 13 convictions for breaking and entering into separate, distinct storage units owned by a variety of victims constituted 13 "occasions different from one another" for purposes of the ACCA. The ACCA applies to this defendant and application of the armed career criminal enhancement to determine his sentencing range under the United States Sentencing Guidelines was proper.

CONCLUSION

For the foregoing reasons, the court overrules defendant's objection to the application of the ACCA in his case.

SO ORDERED this the 16r day of October, 2008.

LOUISE W. FLANAGAN
Chief United States District Judge